UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARLA S. BYRNES,

    Plaintiff,

v.

                                Case No. 1:13-cv-766
                                Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on February 23, 1958 (AR 247).[1] She alleged a disability onset date of January 1, 2006 (AR 246). Plaintiff completed two years of college and additional training as a restaurant manager, and had previous employment as a general laborer in a paper mill, a restaurant manager in training, and a waitress (AR 254). Plaintiff identified her disabling conditions as a cervical injury, lower back pain and back, and scoliosis (AR 252). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 20, 2012 (AR11-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court

---

[1] Citations to the administrative record will be referenced as (AR "page #").

for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2011, and that she did not engage in substantial gainful activity during the period of her alleged

onset date of January 1, 2006 through her date last insured (AR 13). At the second step, the ALJ found that plaintiff had the following severe impairments: s/p anterior cervical diskectomy and spinal fusion of C5-6 and C6-7 in September 2002 and posterior fusion of C5 to C7 in May 2004; cervical facet disease; lumbar disc bulge L3-4; and low back pain (AR 13). At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 17). Specifically, plaintiff did not meet the requirements of Listing 1.04 (disorders of the spine) (AR 17).

   The ALJ decided at the fourth step that through the date last insured, plaintiff "had the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b) except she would require a sit/stand option at will; could do no overhead reaching; could climb ramps and stairs, balance, stoop, kneel, and crouch no more than frequently; and could crawl and climb ladders, ropes and scaffolds no more than occasionally" (AR 18). The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work (AR 20).

   At the fifth step, the ALJ determined that through the date last insured, plaintiff could perform a significant number of unskilled, light work in the national economy (AR 21). Specifically, plaintiff could perform the following work: inspector (2,800 jobs); assembler (3,000 jobs); and machine tender (3,200 jobs) (AR 21). Although the ALJ did not identify the location of the jobs, the vocational expert (CE) testified that the jobs were located in the State of Michigan (AR 68-72). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from January 1, 2006 (the alleged onset date) through December 31, 2011 (the date last insured) (AR 21-23).

4

### III. ANALYSIS

Plaintiff raised one issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating sources and misapplied the law.**

Plaintiff contends that the ALJ afforded inappropriate weight to the opinions of a one-time consultative examiner, Donal Sheill, M.D., over the opinions of Mark Moulton, M.D., a board certified orthopedic surgeon who treated plaintiff for over nine years. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and

(2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff points out that Dr. Moulton performed two cervical spine surgeries in the course of treating plaintiff, and on September 9, 2011, completed a cervical spine residual capacity questionnaire (AR 2528-2532). In this questionnaire, the doctor stated that he had contact with plaintiff every 1 to 3 months for 9 years, and provided the following diagnoses: cervical spondylosis with radiculopathy C5-6 and C6-7 status post discectomy and fusion September 19, 2002; pseudoarthrosis C6-7 status post instrumented fusion C5-7 May 13, 2004; spondylosis with arthropathy C4-5; and multilevel degenerative disc disease with spondylosis of the lumbar spine (AR 2528). Dr. Moulton stated that plaintiff's impairments caused her to suffer "[c]hronic neck and low back pain exacerbated by activity" (AR 2528). Dr. Moulton identified clinical findings of tenderness, impaired sleep and abnormal posture, as well as limitations in her cervical range of motion (AR 2528). In addition, the doctor noted that at MRI demonstrated multilevel spondylosis with facet arthropathy (AR 2529). The doctor noted that plaintiff complained of headaches which were treated at times with a facet nerve injection on right C3-C6 (AR 2529).

Dr. Moulton opined that plaintiff had anxiety which "frequently" (i.e., 34% to 66% of an 8-hour workday) affected her attention and concentration (AR 2530). When given options regarding plaintiff's ability to tolerate work stress (i.e., low stress, moderate stress and high stress),

6

the doctor indicated that plaintiff was incapable of performing even "low stress" jobs (AR 2530).

Dr. Moulton indicated that plaintiff had a number of work limitations which included the following: walk 2-3 blocks; sit for 30 minutes at one time; stand for 20 minutes at one time; sit for about 4 hours in an 8-hour workday; stand/walk for about 2 hours in an 8-hour workday; need to walk around every 15 minutes while at work; would need the option to sit/stand/walk; could occasionally lift less than 10 pounds, rarely lift 10 pounds and never lift 20 pounds; could never hold her head in a static position and rarely ; could never climb ladders and rarely twist; could never reach overhead; could use her hands and fingers between 20 and 30% of the workday; and would miss more than four days per month  (AR 2530-32).

As an initial matter, the ALJ performed an extensive review of plaintiff's medical history from 2002 through her date last insured of December 31, 2011(AR 14-17).  The ALJ began his review of the medical opinions as follows:

> As for the opinion evidence, the restrictions from Dr. Moulton (Exhibit 15F p. 15) are for light work with a sit/stand option and no overhead activity.  This is similar to the medical assessment completed by Dr. Sheill in his report of consultative evaluation dated October 11, 2011 (Exhibit 27F pp. 1-8) and are [sic] consistent with her fairly stable course and the cervical MRIs since 2006.

(AR 19).[2]  Dr. Moulton's note referenced by the ALJ is dated January 10, 2006 and states that as of that date, plaintiff could return to "light duty," with the following restrictions: sit/stand option; no above shoulder work; and no lifting over 20 lbs. (AR 1263).

The ALJ continued his evaluation of Dr. Moulton's opinion:

Dr. Moulton reported the February 2007 MRI was unremarkable except for some spondylosis, but nothing significant.  An MRI of the cervical spine in January 2010

---

[2] The Court notes that the ALJ's decision incorrectly cited Dr. Moulton's limitations for light work as appearing in Exhibit 15F.  Defendant points out in her brief that these limitations, issued on January 10, 2006, appear in Exhibit 3F at p. 10 (AR 1263).

showed postoperative changes, mild degenerative changes, and little interval changes from the previous study. The MRI in October 2011 showed stable anterior and posterior changes from C5-C7 with mild degenerative disc disease at C4-C5. The restrictions from Dr. Moulton in January 2006 are given some great weight because that date is the alleged onset date and Dr. Moulton is the treating physician. The questionnaire completed by Dr. Moulton in September 2011 (Exhibit 26F) is more restrictive, yet it is given little weight as it is not supported by his own medical evidence of record and restrictions in 2006. The most recent assessment would not allow her current daily activities of part-time work activity, sharing household chores, cooking, driving, going for walks, or visiting with her girlfriends as well as other activities. Section 404.1527 of the Regulations sets forth the Social Security Administration's position on the weight to be accorded to the opinions of medical sources, including their conclusions of disability and imposed limitations. Generally the opinion of a treating physician is entitled to controlling weight if such opinion is supported by objective medical findings and is consistent with the other material evidence of record (SSR 96-2p); however, the undersigned does not find the most recent medical assessment by Dr. Moulton is supported by his own records or the other medical evidence of record. There is no record of any treatment from October 2007 to January 2009, at which time the claimant reported some mild scapular pain (Exhibit 12F p. 4). The EMG and nerve conduction studies of the lower extremities in December 2010 were normal.

Greater weight is given to the statement of Dr. Hyatt in his September 2006 evaluation, in which he reported satisfactory course and recovery from the May 2004 surgery (Exhibit 10F pp. 19-29). Greater weight is also given to the report of consultative evaluation by Dr. Sheill dated October 11, 2011 (Exhibit 27F), as his medical assessment is supported by his report of examination.

(AR 19-20).[3]

With respect to plaintiff's daily activities, the ALJ found that:

The claimant completed a function report dated April 23, 2010, in which she reported taking care of her personal needs without assistance; caring for her small dog; preparing meals 3 to 4 times a week; doing household chores including cleaning, cooking, laundry and ironing; and shopping for groceries, household goods, and clothing. She also reported taking care of the family finances, reading, watching sports on television, going out to dinner, driving, visiting with family and friends, and going outside every day. She reported getting along well with others and understanding and following directions very well (Exhibit 5E). When completing

---

[3] The Court notes that Grant Hyatt, M.D., performed evaluations of plaintiff on February 21, 2003, April 26, 2003, January 19, 2004 and September 1, 2006 (AR 1662-72).

8

> a function report in April 2011, she reported not being able to sit, stand or walk for any lengthy periods of time and not sleeping well. She alleged that she could not lift over 10 pounds or do any activity above shoulder level and was resorting to rest and heat therapy several times a day. She stated that she did light housework including laundry, general picking up, vacuuming, making beds, and cooking; worked part-time in a take-out restaurant; fed and gave water to her dog; and had a hard time putting on or removing shirts over her head, washing her hair, drying or curling her hair, or reaching for things in the high cupboards. She also reported driving, shopping every week or two, taking care of finances, reading, watching television, and couponing weekly. She stated that she talked on the telephone, visited with friends at her home and at their homes, went out to dinner with friends, and attended church (Exhibit 21E).

(AR 18).

Based on this record, the ALJ's evaluation of Dr. Moulton's September 9, 2011 opinion is supported by substantial evidence and that the ALJ gave good reasons for assigning little weight to that opinion. In this regard, an ALJ may consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments. *Walters*, 127 F.3d at 532. While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing the types of work identified by the ALJ. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). Accordingly, plaintiff's claim of error will be denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated:  September 23, 2014             /s/ Hugh W. Brenneman, Jr.
                                       HUGH W. BRENNEMAN, JR.
                                       United States Magistrate Judge